Although I am presiding today, I need to turn the gavel over to Judge Lynn to start this session. I understand that you have a motion that you'd like to make, and we'll now entertain Judge O'Malley's motion. Thank you, Judge Lynn. I do. I move the admission of Dorothy Due, who is a member of the Bar and is in good standing with the highest court of New York. I have knowledge of her credentials, and I'm satisfied that she possesses the necessary qualifications. In fact, I have intimate knowledge of her credentials because I've had the privilege of having her clerk for me for the last year, and she has been a fabulous addition to our chambers in every way. She is a graduate of the Harvard Law School with an undergraduate from Cornell University in biology and society. She has a whole host of honors on her resume, and now she's going to have the honor of joining us as a member of this Bar. I am going to miss her very much. I'm happy that her fiancé, Dave Ray, is here too, and even happier that very soon, not only will I be able to preside over this motion practice with respect to Dorothy, but I'll be able to preside over the wedding of David and Dorothy. So, it's an all-around great clerkship. So, I move that admission. Judge Lin, Judge Stoll? All right, your motion is granted. We are pleased to welcome you to the court, and if you will stand and raise your right hand. Do you solemnly swear or affirm that you will comport yourself as an attorney and counselor of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. Congratulations. Welcome to the Bar of the U.S. Court of Appeals for the Federal Circuit. You get it? Thank you. Okay, now it's time to begin. The first two cases, I understand, counsel, you have been told that we think we can combine these cases. So, you'll have 20 minutes aside. Certainly, if we think that there are issues that we need to pursue more, we can continue, but we'll just combine them rather than jump back and forth. And I understand that that means that you want to preserve five minutes for rebuttal. Is that right? Yes, Your Honor. Okay. Mr. Holloway, would you like to begin? May it please the court. We now are looking at two appeals dealing with a related to patents, the 707 patent and the 437 patent. Both of these appeals come from inter-parties re-exams and both concern errors that were committed by the examiner and the PTAB in finding anticipation of certain claims in both of these patents. I'm going to begin with the 437 patent. The error committed by the examiner and the PTAB below is one of the claim construction concerning the term calculating directly. And what's most important about the error in the broadest reasonable interpretation as found in this case is that it's 180 degrees from the interpretation of the term given in the organic prosecution. And I'll begin by laying out the fundamental terms of this claim and identifying where that turnaround occurred. So, it's your contention, as I understand it, that it's not really a question of that there's any intermediate step as it relates to a changing of the raw data. It's that you're doing this, you're determining whether it's a resting or an active algorithm first and that's what makes it indirect? So, as it turns to the Amato reference, you're not performing a calculation step with the two values of the expressly claimed parameters. So, in essence, what's claimed by the calculating directly term and what was described in the original prosecution and the way it was applied by the examiner, you have two values. A first physiological parameter that's generated in Claim 32, a second physiological parameter that's generated in Claim 32, and then a calculation step that involves those two values. And that's where the distinction occurs because in Amato, there is no second value that's used in the calculation step. It's a condition that's put on the system to decide whether and when to perform a given equation with one data value. Now, so it's your position, just to make sure I think I understand exactly what you're saying, but you're saying that because the claim says directly from SID first and second parameters, that should be read as meaning something like using the first and second parameters as variables. Yes, I mean, that's exactly right. I mean, calculating directly from the two parameters is you're performing a mathematical step. There's no dispute about mathematics. The calculation term isn't the issue, right? Calculation, both sides seem to agree, is a mathematical process. What directly means, as it modifies calculating, is the how. So there's been a lot of talk in the appeal briefs here and below that there's no algorithm set forth in Claim 32, and there's no specific formula given in the specification. And that's true, which makes Claim 32 broad. But it's not overly broad because it is limited. The directly modifies calculating as to how. How do you calculate from the two claimed parameters of first and second parameters? If you use one of them to pick an algorithm, and the other one is in the algorithm. So that gets back to what happened in the organic prosecution, right? So in the organic prosecution, that's exactly the same piece of prior art construct that was put before the examiner. You had a variable that lets you know whether or not you were in motion. And then the second one actually was performed, the regression calculation, in the original file history. And the examiner correctly concluded that's not directly, that's not a value. That use of that second parameter decides when to do the calculation and how to do the calculation. But it's not part of the calculation step. And previously, as part of the organic prosecution, that's exactly what the applicant said about the term, about the calculating from statement, about the limitation to the claim. But isn't it true that the calculation is the result of two factors, that there's the selection of the algorithm and then the actual calculation done by the algorithm? So both parameters have an effect on the ultimate value, correct? I would agree that it has an effect on the ultimate value. But that's not a direct calculation. I mean, at what point in time does that stop? Is there anything that alters that calculation or interferes with that calculation or adjusts that calculation? There's no intermediate input or other. In other words, the calculation is what the calculation is from those two parameters invariably. So ultimately, that's probably correct. Your first step is you choose which formula to use. The second is you input the actual physiological parameter that was obtained into the calculation that was selected, and then math is done. So that whatever those two parameters are will result in a single calculated result? Yes and no. I mean, so it does depend. So the first one is not really a value, right? It's whether there's motion or not. That doesn't go into the calculation step. That then picks which equation we use. But it is a parameter, isn't it? I mean, we're talking now broadest reasonable interpretation. I understand, but it's not a value. So it is a parameter, but when you look at the construct of the claims, it's not obtaining the motion sensor isn't, for example, the motion sensor isn't just saying yes or no to motion. It's saying things like how fast is your heart beating or what your body temperature is. Then there's a value obtained from that. That's what's described in the specification. And then there's math done to that. And those two values are what gets put into the equation that gets performed. That's why the claim says calculating directly from the first and second parameter. It's not just you obtain a piece of data, you obtain another piece of data, we'll do some stuff to the data, and then ultimately we'll do a calculation. It's very specific. It lays out you generate a first physiological parameter, you generate a second physiological parameter, and then you do math to them. But there's nothing in the specification itself of the 437 that actually sets out any mathematical formula that shows what you characterize as a direct calculation. There is no formula. That is correct. But the 437 patent does lay out that you can perform these quantitative status information calculations using a variety of pieces of information. For example, at column 14, it lists off that you can use... 437, column 14, if you go down to lines 45 through 53, it describes the various types of information that can be used in a qualitative status information calculation. That includes the data indicative of various physiological parameters generated by the user device. That's exactly the first and second parameter that are described in Claim 32. Then you have the data derived from the data indicative of various physiological parameters. That's actually more relevant to the other patent, but it's still an example of not just the generated data, but something we've done to the data. So back to Judge Lynn's question. So let's say I do have a sensor in a mono that lets me know if I'm moving or not. It then says, okay, you're moving or not. That's actually more of a derived physiological parameter. It's made a decision about motion and then selected an equation. Then it sticks in a generated physiological parameter that are the first and second parameters of the claim. It goes on to list a couple others that are more relevant to the 707 than the 437 patent. So back to your question, Judge O'Malley. No, there's no specific formula given in the 437, but the specification describes a host of inputs that could go into a qualitative status information calculation. The claim is then more specific. The claim then gets to the how. Calculate directly from the two parameters that are expressed in the claim. But what the board said is directly from means that there's no actual change to the physiological data. Well, there's no point-to-point. The definition that they've used is that point-to-point without deviation, and they've kind of changed that. The way they've kind of interpreted that definition is to say you're not really manipulating the data even any further. And respectfully, I don't think that really matters. At this point, we've left calculating directly, and we're trying to figure out how much wiggle room we can give to what happens to two pieces of data to then fit it back into calculating directly. And that's why I would put... Calculating is a pretty broad word. Calculating doesn't mean there's one formula. No, it's a mathematical process. I agree with that. That's why there's no real dispute on the calculation term. I mean, we all kind of agree that's just the math process. But the how, which is directly, is a limiting term. I mean, so when you go back to even before the term directly was added to the claim, if you look at how the applicants in the original prosecution described it, they were talking about this step and said that the essence of the above limitation, that's the calculating quantitative status information step, is a calculating step wherein the inputs to the calculation are the first and second parameter. And that's at A1765. So this is the... And that was persuasive to the original examiner. The examiner looked at the original Amano reference, which I will agree is not the same, but I would put forward that the nuances between what we've called Amano I and Amano II have no import here. It's really both of them get down to the same thing, two pieces of data, one that's used to pick an equation and the other that's actually used in the math. So in that instance, they're talking about the same thing. And the examiner's logic in the organic prosecution was that's not calculating directly. But that's not finding, right? I mean, I understand your argument. Your argument is that there was some good logic in the original prosecution and it should apply continuing. But it's certainly not binding on a later re-exam. I would agree that it's not binding on a later re-exam. But I do think we're having kind of an interesting thing created now with inter-parties re-exams, inter-parties review, and even ex parte re-exam. When we're talking about this broadest reasonable interpretation construction, and we've got a construction that went through in the original prosecution, I can understand in a later re-exam we come back and we say, OK, you didn't get it exactly right. Here's this other piece of prior art that's even closer than we had before. And so there might be some tweaks necessary to the original interpretation to make sure that the office got it right. But to me, this is a 180-degree shift. The exact logic on the exact claim term has been decided was completely wrong. And the office below, neither the examiner nor the PTAB and the requester, no one explained why the original application wasn't the broadest reasonable interpretation. They keep saying it's not the broadest. But no one's explaining why that was an unreasonable interpretation. Instead, we've come forward and said the current application is broader. I'll give you that. But it's not reasonable in light of what's described in the claim specifically and how it should be applied based on what was done in the original prosecution. The other thing I would like to point out is that the claim differentiation was raised by the requester in light of this. Can I ask you just one more question? Yes, ma'am. This is on the reference you have on A1765. That's the page that you just cited to us for the original prosecution. I mean, it says the essence of the limitation is a calculating step where the inputs to the calculation are the first parameter and the second parameter. That's what you're relying on? Is it that language that you're relying on for your claim construction? A1765. Yes, ma'am. Again, the essence of the above limitation is a calculating step wherein the inputs to the calculation are the first parameter and the second parameter. And then if you look at what the examiner – the actual words the examiner used when describing why it overcame the Amano 1 reference talks about how – sorry, let me just find that real quick. The original examiner used the term – this is at A2481 of the record. The examiner says Amano teaches that the second parameter motion is only used to determine whether and when the calculation is performed. Therefore, the second parameter motion does not render a value that is used in the calculation. And I think when you read A2481 and A1765 together, the language there is very similar, and then the examiner said value. And I think that's where the distinction occurs between the way body media is reading the patent, the patent owner is reading it, and the requester and the current stance of the office is that you have a calculating step where the inputs are the two values that are expressly claimed in the claim, the first and second physiological parameters. I think the claim differentiation point that requester made actually goes the other way than requester thinks it should. Claim 51 adds another step to the calculation, adds another variable to the calculation. It says you take the original calculation that's being done using the first and second parameter, and then you add in the list of input values – I'm sorry. Claim 51 then further limits it and includes a calculation to add a derived data input. So back to that list that we talked about in column 14. There are now three input variables required in Claim 51, the two physiological parameters and a derived physiological parameter. So I think that goes even further to suggest that any kind of derivation step that would happen before the calculation that occurs in Claim 32 is different. That's what happens later in Claim 51. Well, in fact, that's what the board said, did it not? That there really is no derivation that's occurring. I mean the choosing of the algorithm is not the same as a derivation of the raw physiological data. Well, but then the patent office – the board went on – Just because it goes through a mathematical formula doesn't mean it changes. Well, the board goes on to say that what they mean by point-to-point without deviation is that there's no significant inference being done, and that's at page A7 of the record in the PTAB's decision. The selection of a condition precedent on an equation is kind of the quintessential inference. I've made a decision that the person's in motion or not. That's an inference. That's a derived data parameter. I then go on and perform a calculation using that equation on a piece of data that I generated somewhere else. I mean just using the PTAB's own explanations for why directly can include some level of indirect kind of emphasizes the point that all of the things that are being done in Omano preceding the actual caloric expenditure calculation are inference steps that are being performed. Okay, we're moving into your rebuttal time. I'll restore some of it, but I want to hear what you have to say about the 707. Okay, on the 707, the issue here is not a claim construction issue, unlike the 437. This is a fundamental failure of evidence in the record that the output indicators that are shown to the user include the same data that are in the derived physiological parameter as well as the underlying generated physiological parameter that went into that calculation. So in an effort to be quick, Omano is applied below. Pulse rate is the first physiological parameter. Body temperature is the second physiological parameter, and caloric expenditure is the derived physiological parameter. There is no evidence that the output in the record, there is no evidence that the output in Omano of caloric expenditure is based on the data that was generated for body temperature or heart rate. Just looking at figures 19 and 37 shows this. They have different numbers of data points. The scale for caloric expenditures is kilocalories per day. The scale for body temperature is just over time. Nowhere in the Omano reference does it say the same body temperature that generated this caloric expenditure data is shown to the user. In fact... But you're saying that it has to be shown to the user at the same time or on the same screen. No, ma'am, that was argued below, and I would agree that the simultaneous versus non-simultaneous aspect was an element of claim construction that we put forward below. Even assuming non-simultaneous use, there is nothing that says that the data in 37 of body temperature is the body temperature data that generated the caloric expenditure in figure 19. And that's the problem. You have to be able to link the data between the two outputs, whether they're shown at the same time or not. And in fact, Omano teaches you it's probably not the same data. And I emphasize probably because nowhere below did anyone say this was inherent. No one said below that there was some level of inherency that, yes, automatically the body data shown in 37 must be 19. Because that would require you to show that it was necessarily the case, and no one did that. Instead, if you look at how the kilocalorie... I'm sorry, if you look at how body temperature is done in the Omano reference in relation to what gets generated in figure 37, I would point the court to A197, which is the Omano reference, at 24, column 24, lines 4 through 19. It actually talks about switching out of modes in order to collect and display the body temperature data. There is no suggestion there that the body temperature data that's being collected in real time. It even talks about when you get into the body temperature mode, it goes from current time forward. And then when you're done, you depress switch 2, and you switch out of body temperature mode, and the circuits are released. So if you're releasing the circuits, you're not storing the body temperature data, and there's no express reference in Omano that the body temperature data or the pulse rate that are described in a different column that could be displayed to the user, without some statement that that same data, underlying physiological parameter data, is used in the derivation calculation that's ultimately shown in the caloric expenditure data, you can't have anticipation. There's just nothing there to support that. Okay. You better save a little bit of time. Yes, ma'am. May I please record Dave Haddon for basis? Let me start with the 437 patent that I'm calculating directly from. Can I ask on that, what did the board mean by point-to-point with nothing intervening or no unnecessary step? What would be an intervening step? Give me an example. So I think, and this goes somewhat to the original prosecution, so the claim before it was amended, say calculating whatever it is, dot, dot, dot, from data indicative of a first and second parameter. So the idea before the amendment was that the inputs to the calculation did not have to be the measured parameters, but could be some data indicative of them. So you can think about something that could be a proxy for your pulse or your body temperature, but is not. It's something else that is measured. Okay. My best understanding of what the board said was that would be you're inferring a parameter like pulse or body temperature from something else that you're actually using in the calculation, and that would not be direct. That is, I believe, what the board was trying to say when they're talking about a significant inference. So you are inferring these parameters rather than using them directly in the calculation. But I think none of that matters in a sense because Amano, as Judge Lynn noted, actually clearly uses two measured values in its calculation. So figure 17 is a flowchart that shows the calculation of caloric expenditure that is performed every minute in Amano. And the inputs to that calculation are the measured body temperature, the measured pulse, and the motion sense from the motion sensor. And those are actual values. They are compared against thresholds to select the regression formula. So there is a value for body temperature. It's part of a mathematical calculation. It's compared against a stored threshold value. Aren't you ultimately inferring or deriving an inference from your conclusion as to whether you're at a moving or a resting state? Part of the calculation is trying to figure out where you are in this curve in Amano that plots calories versus pulse rate. And the slope of that curve varies based on whether you're active or not. So in a sense, Amano is inferring or using some information, the measured information, to figure out whether you're moving or not. But the calculation doesn't infer anything. The calculation takes the measured pulse, the measured body temperature, and the measured motion, feeds it into an algorithm, and outputs a caloric value that depends on each of those parameters at each minute. And then those values are stored and summed and provided to the user. So there's no dispute. Wait, are you saying that the algorithm that is used in Amano uses both the first and second parameters? Yes, so the algorithm is figure 17. The whole thing? Yeah, the whole thing. Because every minute you're running that algorithm. So every minute you're taking a measured body temperature and pulse. I don't understand it. I thought you were saying that... No, once you get a regression formula. I thought you were saying the regression formula used all of the... No, the regression formula in Amano uses pulse. But you're picking a different regression formula every minute based on the other values. And as we explained in our briefing, you can rewrite that algorithm as a single formula with three variables. It's just a different representation of the same calculation. But it will always depend on the values of these measured parameters. Now, you would concede that there is no actual teaching from either of the references that a GSR sensor would be used to calculate calories. I agree, and there's no actual teaching in the Teller patents, the body media patents, of using a GSR sensor to calculate calories. The only use of GSR in the patents themselves... So there's a list, Table 2, that shows sort of calculated parameters and the relevant sensors that you could use. And GSR is not listed among the sensors that you would use to calculate calories. And there's no description of using GSR in these patents to calculate calories. The only description for calculating calories in the patents is, it says you can use heat flux times time times some factor, or you could use motion times time times some factor. So there's no description of using GSR at all to calculate calories. But in Amano and Milimaki, what the board relied on was not using GSR alone to calculate calories. All the board said was, look, Amano has this algorithm where it selects a regression formula based on whether the user is active or at rest. Milimaki has all the same sensors as Amano, plus GSR. Milimaki says, look at lots of different sensors to get a better, more accurate determination of the user's condition. The board says, sure. GSR measures sweat. Sweat is an indication of physical activity. It would be useful to have that additional indication of physical activity, along with body temperature and pulse, in Amano to more accurately pick the right regression formula. That's all the board's logic was, and it makes perfect sense. I mean, it's common sense that sweat is an indication of exercise. That's how it would be used in the Amano combination. Let me just address one other thing on calculating directly from. There's a lot of statements about somehow what the PTAB did was inconsistent with the original prosecution. And that's just not true. There's actually nothing in the original prosecution that addresses this calculated directly language. So there are parallel claims. Claim one says calculated from without the directly. And so in the appeal that went up to the PTAB in the original calculation, the board actually relied on claim one that did not have the directly language as the exemplary claim. So there was never any discussion of this directly word that was added to one claim and not the other. And so the distinction of Amano 2, they call it, which is a completely different patent than this Amano, the Amano we are focusing on, was not before the examiner in the original prosecution. It was actually dumped in an IDS after the notice of allowance, so it was never considered. But the Amano 2 patent did not calculate calories from multiple measure parameters. So you're saying that the page Mr. Holloway was citing earlier was not the same claim language. No, it was not. And just to be clear, that Amano reference, the different one, what it did was it would use the accelerometer to know that you're moving too much so we can't accurately measure your pulse wave. So it would disable that measurement. The other thing it would do is it would say, OK, you're moving a lot. You're now in an exercise period. We can start trying to calculate your calories. But it didn't use body temperature and it didn't use motion as part of the calculation. It would just say turn on, turn off based on motion. So it was a completely different reference and algorithm than is used in the Amano reference at issue here, which does use the actual measured value in the calculation. And that's the big advantage, and Amano talks about it, that it is more accurate than prior methods that used only pulse because you may have a high pulse due to stress or other factors and it was useful to look at other measured parameters to determine what the cause of the pulse was to know where on that curve to map you to calculate calories. So that is the main issue on 707. Amano 17 is a mathematical calculation. It uses the two parameters. Body media can't now come in and say that that calculation is somehow not good enough or not direct enough. When their own patent doesn't have any calculation at all. There is no formula or calculation of calories using multiple parameters that is described in the body media patent at all. So you can't come in and say your calculation is not direct enough somehow and this claim requires a specific two-variable formula or something when there's no such formula in their own patent. On the second issue on the 437 patent, there's kind of two points to this. The first is their claim construction argument is that the data that has to be presented in relation to the calculated data must be the exact set of data points of the measured parameter that we used in the calculation. And that's just not what the claim says. So if you look at the claim which is on A4 in the P tabs. But wouldn't that logically flow from the use of the word directly from set first and second parameters? I'm sorry. I was moving to the other patent. Oh, the 707. Yeah, the 707. If you have more questions on the 437. OK. So this is in relation to? Yeah, this is the in relation to part. And so in A4 of the joint appendix on the 707, there's the claim. And the claim says that it requires this presenting said data indicative of said first physiological parameter of the individual. And there's no dispute that the antecedent basis for said data indicative of said first physiological parameter is the clause up at the beginning of the claim that says, a first sensor adapted to generate data indicative of a first physiological parameter. So all that refers to is data that comes from the first sensor. Now, the claim also requires using said data or data from that sensor to derive another parameter. But there's nothing in the claim that requires that the exact data points that are displayed are the data points used to derive the derived parameter. That's just not what the claim says. And there's no support for such a limitation in the 707 patent itself. Because again, the 707 patent doesn't have any calculation of a derived parameter from anything, much less two parameters. Now, what they point to in their briefing is figure 9. Let me see if I can find it. Which is on page, it's 829. 829. So what they point to for this display in relation to is figure 9. And figure 9 shows this bar graph, 315, which the patent explains is a measured heat flux. And then there is this squiggly line motion. And the patent explains that that is some detected motion from a motion sensor. But what they point to as the derived parameter is this little squiggly line, 210, with a 4 next to it. But what the patent actually says is that is a sleep, sort of a qualitative indicator that is provided by the user. So there's nothing shown here that is calculated from either the heat flux or the motion. And nothing in particular that is calculated from those in combination, as this claim would require. And there's certainly nothing that says. Isn't the logical point that your friend on the other side is making is that we're trying to show you how your heat data on your skin or whatever it is will then give us information about your caloric expenditure or about your sleep patterns or whatever? I mean, isn't that the point that there's some effort to show the user the relationship between the two? That's what the claim says. All I'm saying is that there's nothing in their patent that would support the notion that to give that relationship, you would have to use exactly the same data points. So think about a system where it samples your body temperature every second. And maybe it uses the odd samples to calculate your calories. And the even samples it displays to you as an indication of your body temperature. They would say that is excluded from this claim under their construction. There's just no basis for that. There's nothing in their claim or in their patent that describes that sort of narrow requirement. But let me go to Amano, because I think, in a sense, none of this matters. Because Amano, again, describes exactly what they're saying is required. Amano stores your body temperature, your pulse rate, your motion, and your calculated calories as a time series. It stores it in RAM. And then reads it out and plots it as a graph shown on figure 19 as a function of time. Now, they make hay by saying that figure 19 shows a day and figure 37 shows an hour. But Amano explicitly says that the user can set that interval to be an hour in figure 19. So the user can set the device to show what their calories burned were for the last hour while they're exercising. They hit another button and it toggles and it displays the body temperature measurements for that same last hour. That's what Amano describes. And Amano describes it. And it does this, in part, to show the user or the coach exactly that underlying data so that they can see the relationship. And it says also that, in fact, and this is later in column 28, Amano describes that it can actually store and does store the measured body temperature and the measured motion and the measured pulse as a function of time. But it's one thing to store them and it's one thing to even calculate from them. But isn't the point of this patent that you not only calculate from them, but you then display it to the user so the user can understand and appreciate the relationship between the two? Yes, Your Honor. And how does that happen in Amano? So Amano describes, let me find the right spot, but Amano describes first that the body temperature data that in the calculation of calories is the same body temperature data that is displayed to the user. So if we look at the site one. So Amano describes, and I'll find this for you. So column 23, Your Honor, this is the A197. Amano says that under the heading deep body temperature and process result thereof. It says in addition to being employed in the calculation of caloric expenditure. What line are you on? I'm sorry. What line? Which line? I'm sorry, this is column 23, line around 13. OK. In addition to being employed in the calculation of caloric expenditure, the body temperature, which is sufficiently close to the subject's deep body temperature, is measured in this embodiment. So it's saying that the body temperature that is used in the calculation is the same one that they're describing here in the body temperature measurement section. And then if you go up to column 24, line 4, it says when the subject wants to know the change in body temperature over time, you may depress the switch SW2 to select that function. As a result, the CPU reads out from RAM 203 the measured body temperature values and the time of measurement. Now, if we go back to the section of Amano that is talking about calorie calculation, it says, and this is in column 22, line 13, it says in this case it is also acceptable to provide a design in which the body motion detected by the body motion detector 101 means body temperature detected by body temperature detector 101, and the pulse rate detected in pulse rate calculator 114 are stored in RAM 203 in a time series. So this is the same RAM in the same time series where these values that are measured that are used in the calorie calculation are stored. And then when the user wants to display them as part of the body temperature, they go and switch this switch SW2, which will display them as a function of time. And to be clear, in the calorie calculation, which is the figure 19, and this is in column 19, line 31, it notes that the specific time interval in the example is day, but above that at line 23, column 19, this is at A195, it says the CPU carries out controls to that two-dimensional display by sequentially plotting the readout sum values in the y-axis and the time interval in the x-axis, and it says that the user can select the interval. And selecting the interval, I'm sorry, is higher up in column 19 at line 10. If hours selected the specific time interval, then the calorie expenditure in one hour is calculated. So that's the same one hour period that's shown for body temperature in column 37. So Amano explicitly describes that the same measurements that are stored in RAM that are used to calculate calories can also be output as a time series and displayed during that same hour interval period. What's your response to the argument that this whole notion that it is a question of they can be in relation to each other over time is a new ground of projection? It isn't a new ground, Your Honor. The PTAB actually quoted from and adopted in the examiner's rationale as part of their order. And in addition, and I can find this site, body media responded to this argument at oral argument and acknowledged that it was an argument made by the examiner. So this is at A886, and this is from the transcript of the hearing before the PTAB. And it actually begins on A85, where Judge Jeffrey is asking body media's counsel about this point. And he says, beginning at the bottom of A85, the values are plotted with respect to time, and that way they're plotted indicates that it's a time-based indication. And so the presentation of that indication with respect to time in relation to other presentations with respect to the time element. So he's explaining this point that because they're both shown with respect to time, aren't they being related? And Mr. Preventa, body media's counsel, goes on and says that argument has been made by the respondent and by the examiner. And then he goes on and tries to address that argument by saying that time is not a physiological parameter. So this is not a new argument. The examiner raised it. Body media's counsel responded to it and acknowledged that the examiner had raised it at the overall argument. OK. Thank you. Your time is up. We'll give you four minutes for rebuttal. Can you answer that last point first? Yes, ma'am. The what counsel is pointing to in the oral argument as evidence that somehow we were acknowledging that this over time linkage, where if you simply say caloric expenditure over time and body temperature over time, the denominator is both time. So therefore, the claim limitation is met. I mean, the way I read this is Mr. Preventa was loose with the language in terms of responding. Counsel can't point to an actual rejection or PTAB argument in a brief in which they're actually laying out this over time. The first time you see that argument presented by the board is at A6 in the decision. So I can't explain Mr. Preventa's words. But when you read this context, he's explaining, he says this wasn't an issue in the re-exam, the question of whether this over time thing wasn't an issue with the re-exam. He says that at, I believe it's at A87 or A88 in the. I mean, he specifically says that this is an issue that was raised, right? Again, I can't speak to Mr. Preventa's language. But I don't see anything in the office actions or the briefing below to indicate this was actually laid out by the office or the examiner. Do you agree, though, that at a minimum, you just said that it was raised for the first time in the final decision? But it was at least raised, you agree, I think, during the argument. Oh, yes. To be fair, Judge Stahl, Judge Jeffrey's question, beginning on page 885, is the first time in which the logic of caloric expenditure over time, body temperature over time, they're linked by time. I would agree that's the first time we heard that. And under the new rejection case law, the question is whether the thrust of that was ever made known to us during actual examination. And we reported in our briefing it wasn't. I want to address, on the 707 patent, counsel's walking through of all these citations to the amano reference, that's not anticipation. Anticipation requires that you show all of the claim elements, not only in a single reference, but in the manner assembled. So that's the net money in case 545 F3rd at 1369. This is trying to cobble together a statement that this could be the same data as it is over here is not anticipation. You would have to show that the body temperature data that you're showing in figure 37 and the caloric expenditure that you're showing in 19 are the same data. And I specifically want to point out that it's not. Counsel indicated to you that column 23 and 24 indicated that they're talking about the same data. But he stopped reading in column 24, where it then switches and lets you know that it's not the same data. So let's go back to A197, column 24. And I won't read all of it. It begins, when the subject wants to know the change in body temperature, he just presses switch 2. And then counsel read down to about line number 9. But if you go back up, I'm sorry, about line number 7. But if you keep reading, as a result, this is at line 6. As a result, CPU reads out from RAM the measured temperature values and the time of measurement for a specific portion of time from the current time. So I hit the switch. It starts. So that's now. So what I'm looking at and being collected in this column is temperature data starting now. The data that is then converted to a display and sent to the display, that's at lines 10 and 11. The next paragraph at 15, when it is no longer necessary to measure body temperature, the subject again presses switch S1. And CPU 201 concludes the processing to measure body temperature and releasing the settings in the watch circuit. So when you're done with body temperature, you hit the button and you leave body temperature. So Amado has nothing in there that expressly links the body temperature data that's being disclosed in figure 37 and the caloric expenditure data that's being shown in figure 19. The claim, as Judge O'Malley pointed out, requires that. The display in the claim, the output to the user, are indicative of the data of the derived physiological parameter and at least one of the physiological parameters that went into the derivation. My time is up. Thank you, Your Honors. Thank you. All right, the cases will.